REBER v. ELLIS BROS.

(District Court, E. D. Pennsylvania. March 6, 1911.)

No. 7.

BANKRUPTCY (§ 287*)—ACTION BY TRUSTEE FOR PREFERENCES—ASSUMPSIT—"QUASI CONTRACT."

A trustee in bankruptcy may sue in assumpsit for the value of a preferential transfer of goods by the bankrupt to a creditor, who takes the goods impressed with the obligation created by the bankruptcy act to

---

restore or pay on the trustee electing to sue; such obligation being a "quasi contract," which is a fiction of law adapted to enforce legal duties by actions of contract, where no proper contract, express or implied, exists.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 287.*

For other definitions, see Words and Phrases, vol. 7, pp. 5883–5885; vol. 8, p. 7777.]

At Law. Action by J. Howard Reber, trustee in bankruptcy, against Ellis Bros. On motion to vacate rule to file affidavit of defense. Refused, and defendants ordered to file such affidavit.

Charles H. Ortt, for plaintiff.
Alfred Aarons, for defendants.

J. B. McPHERSON, District Judge. This is a suit based upon a preferential transfer of goods. It is brought in assumpsit to recover their value, and, as the Pennsylvania procedure act of 1887 (P. L. 272) requires an affidavit of defense in that form of action, the plaintiff entered a rule for such affidavit. The defendants moved to vacate the rule on the ground that the action should have been trespass (in substance, an action of trover), in which form no affidavit is required. The statement of claim avers clearly all the elements of a preference, and the plaintiff's position is that assumpsit is the proper form, because (1) the defendants hold the goods under an implied contract to return them or pay the value; or (2) even if their possession may be described as tortious, the tort may be waived and the value of the goods may be recovered in assumpsit. The question—whether trespass or assumpsit is the proper form—was not raised and is not considered in Plummer v. Myers (D. C.) 137 Fed. 660; but, if it is to be decided according to the law of Pennsylvania, I think the decision should be in favor of the plaintiff. The defendants' contention is purely technical, and is apparently interposed for delay. If they need not file an affidavit of defense, a summary judgment may be avoided, and they may take their chances before a jury. If the affidavit must be filed, however, they must first submit their case to the scrutiny of the court; and, if they cannot swear to a prima facie defense, the plaintiff may recover a judgment without needless delay. But, of course, if the proper form of action has not been chosen, the objection must be sustained, and the plaintiff must discontinue and bring another suit.

In my opinion, assumpsit is permitted, not only by the Pennsylvania law, but by the general principles governing constructive, or quasi, contracts. A preferential transfer is not a mere nullity. The creditor takes title to the money or the goods transferred, but it is defeasible. He takes it impressed with an infirmity created by the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), namely, the obligation to restore, or to pay, if the trustee shall elect to sue. This is an implied term of the transaction, as real and as effective, and of the same character, as the double liability imposed upon a stockholder by numerous statutes. The stock-

holder does not actually agree to assume the liability. The statute compels him to assume it, and (so far as I am aware) it has always been enforced in some form of promissory action. The decisions of Pennsylvania seem clear upon this subject. The leading case is Hertzog v. Hertzog, 29 Pa. 465, where Judge Lowrie points out the distinction between implied and constructive, or, as they are now called, quasi contracts. The term "implied contract" is often loosely used, when constructive contract is the proper phrase. He defines constructive contracts as:

"Fictions of law adapted to enforce legal duties by actions of contract, where no proper contract exists, express or implied."

An illustration is Harris v. Christian, 10 Pa. 233, where an action of assumpsit was brought by a justice of the peace to recover fees. A statute authorized the fees, and it was therefore held that:

"Where a statute gives fees, the law implies a promise to pay by the person to whom the service is rendered."

Another illustration may, be found in Phila. v. Telegraph Co. (C. C.) 109 Fed. 55, where the city sued in assumpsit to recover license fees, imposed by the authority of a statute. See, also, 7 Am. & Eng. Ency. of Law (2d Ed.) 92, where such contracts are described as:

"Obligations imposed by law, without regard to the intentions of the parties, or even contrary to their intentions, for the purpose of enforcing legal duties by actions ex contractu. Contracts implied in law are also known as constructive contracts, or adopting the name from the civil law, as quasi contracts."

In 9 Cyc. 243, it is said, and the statement is supported by many citations:

"The term 'implied contract' has also been applied to a class of obligations which are imposed or created by the law, without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. These obligations, however, are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of remedy. They are described by the term 'quasi' or 'constructive' contracts."

In Steamship Co. v. Joliffe, 69 U. S. 450, 457, 17 L. Ed. 805, a claim under the California pilotage law was held to rest upon a quasi contract; the court saying:

"The transaction * * * between the pilot and the master or owners cannot be strictly termed a contract; but it is a transaction to which the law attaches similar consequences. It is a quasi contract. The absence of assent on the part of the master or owner of the vessel does not change the case. In that large class of transactions designated in the law as 'implied contracts,' the assent or convention which is an essential ingredient of an actual contract is often wanting. Thus, if a party obtain the money of another by mistake, it is his duty to refund it, not from any agreement on his part, but from the general obligation to do justice which rests upon all persons. In such case the party makes no promise on the subject; but the law, 'consulting interests of morality,' implies one, and the liability thus arising is said to be a liability upon an implied contract."

And it was held that the claim was so essentially contractual in its nature that the repeal of the statute could not affect it.

"When a right has arisen upon a contract, or a transaction in the nature of a contract authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or any action for its enforcement. It has become a vested right, which stands independent of the statute."

Other cases on this subject in the federal courts are referred to in 6 Rose's Notes on the U. S. Reports, 433. It seems to me that the true ground upon which to put the trustee's right to recover is the fact that the liability to restore or to repay is imposed by a statute upon the preferred creditor. The Appellate Division of the New York Supreme Court, in Cohen v. Small, 18 Am. Bankr. Rep. 817, 120 App. Div. 211, 105 N. Y. Supp. 287, sustains it upon this ground, and I agree with the court's reasoning.

The motion to vacate the rule for an affidavit of defense is refused, and it is now ordered that the defendants file such an affidavit on or before March 16th.